DOHRMAN (CONOVER v.). See Case No. 3,120.

DOLAN (AIKEN v.). See Case No. 110.

DOLAN (UNITED STATES v.). See Case No. 14,978.

## Case No. 3,964.

### In re DOLE.

[11 Blatchf. 499;[1] 9 N. B. R. 193.]

Circuit Court, S. D. New York. Feb. 20, 1874.

BANKRUPTCY COURTS — JURISDICTION OF DISCHARGED BANKRUPT—EXAMINATION AS TO CONCEALED PROPERTY.

1. The summary jurisdiction of the bankruptcy court over the person of the bankrupt ceases on the granting of his discharge from his debts.

2. After such discharge, he cannot, by summary order, be required to submit to examination touching his property alleged to have been concealed or fraudulently transferred.

[Cited in Re Witkowski, Case No. 17,920; Re Nichols, 1 Fed. 844.]

3. For the recovery of such property a plenary suit is necessary, in which, if the bankrupt be required to make discovery, or be examined as a witness, he will be entitled to the benefits and the protection belonging to a party or witness in like cases.

George W. Lockwood, Jr., for creditors.
Francis N. Bangs, for bankrupt.

WOODRUFF, Circuit Judge. On the 25th of June, 1867, Nathaniel Dole presented his petition to the district court for the southern district of New York, for a discharge as a bankrupt. Upon that petition, and on the 27th of June, 1867, he was adjudged a bankrupt. On the 12th of October, 1867, Isaac M. Andruss was elected assignee of the estate of the bankrupt, such election was approved, and an assignment of the estate was made to him. On the 7th of January, 1868, the said Dole received from the court a discharge duly made and in proper form, filed January 9th, 1868. On the 27th of November, 1872, upon the petition of the said assignee, and the affidavit of G. W. Lockwood, an order was made requiring the said Dole to attend before John Fitch, Esq. on the 29th of that month, "to submit to the examination required by the 26th section of the bankrupt act" [of 1867 (14 Stat. 529)]. Subsequently another order or summons was issued and served on the said Dole, requiring him to appear before the said register on the 9th of December, 1872, "then and there to be examined in relation to said bankruptcy, according to the provisions of said act." On the 29th of November, 1872, the said Dole appeared before the register with counsel, and presented numerous specific objections to the proceedings, and the questions supposed to arise thereupon were certified to the district court. Again, on the 9th of December, 1872, he appeared with counsel before the said

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

register, and made other or further objections, the questions upon which were also certified to the district court. Very many of these objections were overruled by the district judge. "as not having arisen before the register." The precise meaning of this is not obvious. Of course, it does not mean that the objections were not made and insisted upon before the register. Possibly, it was intended by this to hold that the objections related to the effect of the examination sought, upon the rights of the assignee in some future litigation, and were, therefore, not reasons why he should not give such information to the assignee for his assistance, and to aid him in the pursuit of property which the assignee claimed to belong to the estate; or, perhaps, it was intended that, even if the objections might be deemed reasons for declining to answer possible questions that might be put in the course of the examination of the party, they were not reasons why he should not be sworn, or submit to any examination. In the view that I have taken of other objections, it is not material to notice this holding further. Other objections were held not to be correct in law, and were overruled on that ground. [See Case No. 3,965.]

It will be unnecessary to recite a previous application for the examination of Dole, or what was done thereupon, or to recite the papers or proceedings relied upon to show that this attempt to compel Dole to submit to an examination was vexatious, oppressive, and in bad faith, for the purpose of extorting money from him or from his friends. For the purposes of this appeal, 1 shall assume that the orders for Dole's examination were obtained by the assignee in good faith, and upon the grounds stated in his application therefor, viz., that, two years or more prior to his petition in bankruptcy, Dole was the owner of large amounts of property, real and personal; that. contemplating insolvency, and with intent to hinder, delay, and defraud his creditors, he, in 1864, conveyed that property to his brother-in-law; that he purchased other real estate in the name of his brother-in-law, and sold it at large profit, for his own use and benefit; and that Dole retained the possession, control, and use of the property aforesaid, and sold large portions thereof for his own benefit. since his discharge as a bankrupt, the consideration being paid to him or to some one for his use, and various other like matters, which. if proved, are claimed to entitle the assignee not only to recover, for the benefit of the creditors, large amounts from the brother-in-law. and have the conveyances, &c., declared void, but. also, to entitle the assignee to compel Dole himself to pay over and deliver to the assignee large amounts, to be distributed among the creditors.

In various forms, the counsel for Dole, in the said objections. insists: First. that the said Dole is not subject to the orders of the court, nor subject to examination at the instance of the assignee, after his discharge has been granted to him. Second, that, if the discharged bankrupt is not wholly beyond the power of the court to compel such examination, so soon as his discharge is granted, he is, after the expiration of two years, within which the court has, under the 34th section of the act. power to annul the discharge, for causes therein specified, on the application of a creditor; and that a proceeding to annul the discharge can only be taken affirmatively by a creditor, and not by the assignee, and, therefore, even within two years, no such examination can be compelled on the application of the assignee. Third, that, on the face of the papers, it appears that the examination sought can serve no useful purpose, for various reasons, and, among them, that, by the 2d section of the act, any action against third persons by the assignee, to recover property alleged to have been fraudulently conveyed, and claimed by such third persons, is barred, because more than two years have elapsed since the appointment of the assignee; that, if the examination should disclose that any property so fraudulently conveyed had, since the discharge, come back to the possession of Dole, the court could make no summary order requiring him to deliver it to the assignee; that a formal suit would be necessary; that, whatever authority the court has to cause an examination of Dole, it was not given, and should not be exercised, when a suit is the only mode in which the property can be recovered from him, and in which, if he be examined, he will have the rights of a witness, and his testimony will be available for his own protection; and that even a discovery in equity enures to the benefit of the defendant required to make discovery. Other considerations were urged, both in denial of the power to compel Dole to submit to examination and, also, to show that, if the power existed, it ought not to be exercised in this case.

The question whether one, whose improvidence or misfortunes have involved him in bankruptcy, remains. after his discharge, for the residue of his life, subject to the orders of the bankruptcy court. and liable to be compelled to submit to summary proceedings for his examination, at the instance of the assignee appointed to close and settle his estate, is a question of some interest. That question is not to be determined by the special circumstances of a particular case, which may seem to make the examination of the bankrupt reasonable. It is a question of authority, and, perhaps, in a strict sense, one of jurisdiction of the debtor, which, if it exists in the court four years after his discharge, has no apparent limit short of the termination of his life. If the arguments by which the claim to such examination is urged prevail, I perceive no reason why the power does not continue. notwithstanding the assignee shall have rendered

his final account and been also discharged, if a creditor afterwards discovers other assets not administered, or property that, he suspects, has been fraudulently concealed or conveyed by the bankrupt.

The only provision of the statute which is claimed to confer this extraordinary and ever-continuing power, is the 26th section of the bankrupt act; and that meaning is assigned to the following language: "The court may, on the application of the assignee in bankruptcy, or of any creditor, or without any application, at all times require the bankrupt, upon reasonable notice, to attend and submit to an examination, on oath, upon all matters relating to the disposal or condition of his property, to his trade and dealings with others, and his accounts concerning the same, to all debts due to or claimed from him, and to all other matters concerning his property and estate, and the due settlement thereof according to law, which examination shall be in writing, and shall be signed by the bankrupt and filed with the other proceedings." On the construction contended for, the power of the court is unqualified, and may be exercised, according to the terms of the section, by the court itself, of its own motion, without any application therefor, and without any limit as to time, and although the assignee has been discharged.

It is, unquestionably, important to the interests of creditors, and very often indispensable to the proper performance of the duties of the assignee, that the debtor should furnish all the information which he has concerning his property and debts, or which may aid in the collection, disposition and best appropriation thereof, in the settlement of his estate, to the greatest advantage of all who are interested. It was unquestionably the intention of the statute to require that all such information should be furnished by the debtor, as well when he was adjudged bankrupt upon his own petition, as when he was proceeded against, by his creditors, in invitum. Hence, sections 1 and 7 provide summary and stringent means of compelling such disclosures, if the debtor do not voluntarily make them. To accomplish this fully, the very first step in proceedings on the petition of the debtor must be accompanied by full particulars relating to his debts and his estate, which, in cases of those who have been perfectly honest in their dealings, and have done no act contravening the provisions of the bankrupt law, will, in general, be all that is really necessary. Section 11. The like requirement in cases of involuntary bankruptcy is also provided. Section 42. By section 14, the debtor is required, also, to execute whatever instruments, &c., may be proper to enable the assignee fully to possess himself of the property. By section 22, the court may, on the application of the assignee, or of any creditor, or of the bankrupt himself, or of its own motion without any

application, examine, upon oath, the bankrupt or any person proving or tendering proof of claims, concerning the debt sought to be proved. Next, section 26, above recited, authorizes the examination of the bankrupt as to all matters concerning his property and estate; and this, in section 43, is in substantially the same form provided, in cases where trustees are selected to settle the estate, in lieu of an assignee. When a discharge is applied for, creditors may oppose upon any or all of very numerous grounds, imputing falsehood, concealment of property or books and writings relating thereto, failure to deliver property to the assignee, unlawful preference given, removal of property from the district, fraudulent preference, fraudulent payment, transfer, conveyance or assignment, and other acts or misconduct, and, such opposition being made, the questions arising thereupon must be tried in some form. On such a trial, the debtor can, unquestionably, be required to submit to examination touching all the grounds of objection, if the creditors so desire. Sections 29, 31. Finally, the discharge of the bankrupt may, within two years after its date, be impeached and annulled, upon proof that it was fraudulently obtained in any of the particulars which, under section 29, would have availed to prevent his discharge, and which were not, at the time of such discharge, known to the creditor or creditors seeking such impeachment.

The question now recurs—is the debtor liable to compulsory summary examination, four years after his discharge is granted? The question is not, whether the debtor is liable to be examined as a witness in any suit or proceeding in which, according to law or the usual practice, the examination of witnesses is allowed. That is not the claim here made. It is, that, without fee or allowance for his time, without the rights of a witness as such, without the power to use his testimony as he might if examined as a witness in an action or suit against himself, he can be compelled to give his time and submit, as the case may be, from time to time, to a course of examination, without ever being assured that proceedings against him are terminated, and that he is finally discharged from the summary jurisdiction of the court. In the course of the proceedings, from their initiation down to the debtor's discharge, it will be seen that there is the fullest and most ample opportunity to learn from the debtor all that he knows, all that he has done, or suffered or permitted to be done, which affects his property or his debts, which can assist the assignee or trustee in the administration, collection, disposition, or distribution thereof, and all of his life or conduct which can affect his title to a discharge. After that, in any controversy which arises either with himself, or with persons claiming to be creditors, or with persons supposed to have property of the estate in their pos-

session, he can, in the consequent litigation, be examined, as any other person or party whose testimony may be used on the trial.

But, the language of the 26th section, under which it is here sought to examine the bankrupt, is, "the court may, * * * at all times, require the bankrupt to attend and submit to an examination," &c., &c.; and, upon this especial stress is laid. The words "at all times" must, I think, be read in connection with the subsequent clauses of the same section. After saying that the court may require him to submit to examination, the section authorizes the examination of witnesses for the same purposes, on the examination touching the matters to which his examination is addressed; and it provides for the production of the bankrupt for such examination, if he be in custody, or for the examination to be taken in such manner as the court may deem proper. The section then declares that the bankrupt "shall, at all times, until his discharge, be subject to the order of the court, and shall * * * execute all proper writings * * * and do and perform all acts required by the court touching the assigned property or estate, and to enable the assignee to demand, recover, and receive all the property and estate assigned, wherever situated; and, for neglect or refusal to obey any order of the court, such bankrupt may be committed and punished as for a contempt of court." This clause precisely covers what it is sought to compel in the present proceeding. The same section, in subsequent clauses, plainly relates to proceedings prior to his discharge. He is permitted to amend his schedules of creditors and of property. His wife may be required to attend and be examined, and, if she do not, he "shall not be entitled to a discharge," unless he proves that he was unable to procure her attendance. All these provisions tend to show that it is only until his discharge that the bankrupt is under the summary jurisdiction of the court, to be proceeded against by order, in its discretion, and to be punished for neglect or refusal to obey, by imprisonment, as for a contempt of court; and that the words "may at all times require," in the first clause of the section, refer to and should be construed with the provision for such punishment for disobedience as is prescribed in the same section. The requirement of the court that he attend and submit to examination, is one of the orders to which he is declared subject until his discharge. The concluding sentence of this section is especially significant on this point. It declares that "no bankrupt shall be liable to arrest during the pendency of the proceedings in bankruptcy, in any civil action, unless," &c., &c. What is meant by "during the pendency of the proceedings in bankruptcy?" Plainly, on referring to the previous words of the section, it is until the discharge of the bankrupt is granted or denied. It will hardly be claimed that the court has summary jurisdiction to order the examination of the bankrupt when the proceedings in bankruptcy are not pending; and this clause shows what, in the statute, is deemed the pendency of the proceedings in bankruptcy, namely, down to the granting of the discharge, if a discharge be granted. Why say, during such pendency, if that was not the meaning? As against the bankrupt, the proceedings are pending until his discharge, and, until that be granted or denied, he cannot be arrested in a civil action, for any debt or claim from which his discharge, when obtained, will release him. After that, his protection will depend upon the question to be raised in independent litigation, whether his discharge is valid. Certainly, it cannot be claimed that the exemption from arrest continues indefinitely, and, if the proceedings are not pending, as against the bankrupt, then he cannot be subject to summary orders. If, in this particular, the proceedings, as against the bankrupt, can be said to be inchoate and liable to be annulled, and, therefore, to be pending for two years after the date of the discharge, it would not sustain the present summary order; and yet it will hardly be insisted that the exemption from arrest declared in the section extends, by force of that declaration, through that period of two years.

The connection in which this 26th section stands, its relation to the provisions of the act which precede and which follow it, and which terminate in provision for a discharge, and the declaration of its effect, indicate, also, that it contemplates only things to be done and orders made in the course of proceedings which are to precede the discharge, and which prepare the way for the application therefor. Analogy to all actions and suits terminating in judgment or decree, in which parties may be subject to the summary power of the court, also suggests that the power ceases when the judgment or decree is pronounced. And it seems extraordinary, if congress intended that the debtor should continue subject to this power of the court, after his discharge was granted and his liability for the debts had ceased, that, in declaring the effect of such discharge from liability, it was not in that connection provided, that he should, notwithstanding such discharge, remain liable to the orders of the court, and to be proceeded against summarily, to compel his further examination, or otherwise to aid the assignee or creditors in the recovery and appropriation of property for the payment of debts.

Again, by section 4, the register in bankruptcy is required to make memoranda of his proceedings in each case in which he shall act, and forthwith to forward a certified copy of said memoranda to the clerk of the court, to be entered in the proper minute book; and, by the same section, he is authorized, whenever the assignee or a creditor do not oppose, to pass the last ex-

amination of the bankrupt. By the 7th of the rules and orders in bankruptcy, prescribed by the supreme court, it is required, that, "at the close of the last examination of the bankrupt, the register having charge of the case shall file all the papers relating thereto in the office of the clerk of the district court, and these papers, together with those on file in the clerk's office, and the entries in the minute book. shall constitute the record in each case; and the clerk shall cause the papers in each case to be bound together." What is the "last examination" here mentioned, unless it be an examination pending the proceedings? How else is it to form part of the record, and be bound with other papers, to constitute the record in each case? When should such record be made up? The argument here would require the answer, "never during the life of the discharged debtor."

I cannot, upon a review of all the provisions of the act, in connection with those to which I have particularly referred, resist the conclusion, that the summary jurisdiction of the court over the bankrupt had ceased before the present proceedings were taken. That there remains, after such jurisdiction of the person of the bankrupt has ceased, a jurisdiction of the assignee and of the creditors for the winding up of the affairs and the distribution of the property, is unquestionable; but that, after all the opportunities which have been had. which are freely given, for the examination of the bankrupt, for their information,—opportunities neglected, or, at least, not availed of,—he is to remain indefinitely liable to such summary orders, does not seem to me to accord with a just construction of the statute, nor to be required by any necessity or propriety.

It may plausibly be suggested, that it is right that the debtor should always be ready and willing to give all the information he possesses; that it is even his duty to do so, and to aid, in every way, so that his creditors may be paid; that it can do him no harm to be required to tell the whole truth, on the subject to be inquired of. at any or at all times; and that all the language of the statute should, therefore. be liberally construed, to this result. There are many rules of law, and many provisions of statutes, which might be modified or even disregarded upon like considerations. In a particular case, there may be no reason of justice or equity why the assignee in bankruptcy should not be permitted to sue for and recover property of the bankrupt in the possession of and claimed by a third person, notwithstanding two years have elapsed since his appointment. Section 2. There is no obvious reason, in justice and equity, why a preference given by an insolvent to a favored creditor four months before a petition in bankruptcy is filed should be avoided. but one given five months before should stand. Section 35. There may be no obvious rea-

son why any citizen who possesses information, which would be useful and important. to his neighbor, for the protection of his rights or for obtaining due redress or indemnity for a wrong, should not freely and voluntarily give it. It may be deemed his duty to do so. or it may do him no harm, to require him, by summary order of a court or judge, to appear and be examined in relation thereto. This is especially true where discovery of his own frauds, committed to the injury of others, are to be inquired of. Why should he not be summarily ordered to attend before some official and make disclosure? Such general views of right and duty will not dispense with due and orderly proceedings according to law. Still less will they modify the law itself. Parties can be compelled to make discovery which may affect themselves and benefit others, by a suit commenced for the purpose of establishing the right, and, in this state, may be examined as witnesses; and when the purpose is not to charge them, all persons can be compelled to attend and testify in a suit against third parties. So, here, the discharged bankrupt, in a proper suit. brought in due season. can be examined as a witness, either against himself or against other parties. But he will have the same protection, and the same benefit of his own testimony, that any other citizen has, when so examined. The latitude sought to be given, in the present case, to the power of summary examination, would tend to great abuse, against which it would be difficult, if not impossible, for the court sufficiently to guard; and the abuse of the proceedings, to great personal inconvenience and oppression. and even to extortion, would be a very great evil.

I do not deem it necessary to consider the objection, that the present proceeding is a useless one, because the time within which the assignee can bring suit against the alleged fraudulent grantee has elapsed, and such suit is barred by section two; nor to examine in detail the several other objections which were raised before the register and passed upon in the district court. My conclusion, that the order for the examination of the bankrupt Dole was improvidently made, and without jurisdiction for that purpose, disposes of the proceeding. This conclusion is sustained by the opinions in Re Jones [Case No. 7,449], and Re Dean [Id. 3,701]. The proceedings should be dismissed.