### In re MARGOLIES et al.

(Circuit Court of Appeals, Second Circuit. April 14, 1920.)

No. 179.

1. **Bankruptcy ⟨⟩446—Discretionary order revisable only for abuse of discretion.**

A discretionary order in bankruptcy is reviewable on petition to revise only for abuse of discretion.

2. **Bankruptcy ⟨⟩418(1)—Discharge does not deprive court of summary jurisdiction over bankrupt.**

The discharge of a bankrupt does not deprive the court of bankruptcy of jurisdiction, while the estate remains unclosed, to entertain a summary proceeding by his trustee to require him to surrender property alleged to have been fraudulently concealed.

Petition to Revise Order of the District Court of the United States for the Eastern District of New York.

In the matter of Harry Margolies and Benjamin Kliedman, bankrupts. On petition by Harry Margolies to revise order of District Court. Affirmed.

The bankrupts were adjudicated in January, 1918, and Margolies was discharged on July 18, 1919. Some months later, the estate not being closed, the trustee required Margolies to show cause why an order should not pass requiring him to turn over to said trustee the sum of $6,812.32, alleged to be or to represent the value of property concealed and withheld by him from his estate in bankruptcy. Margolies appeared and pleaded that the court was without jurisdiction to entertain the motion, because he had been discharged. This was overruled, and an order entered sending the matter to a commissioner to ascertain the facts and report. This order the petitioner brings up for review.

Sol. M. Selig, of New York City, for petitioner.
Alexander Levine, of New York City, for trustee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The order complained of is plainly interlocutory, for the petitioner has as yet been required neither to pay nor perform; the trustee is given leave to prove his case—nothing more. It is also in a sense discretionary, for the court might have considered (as has often occurred in similar cases) that the certain expense of the proposed investigation outweighed probable gain.

[1] We have pointed out that under the statute discretionary orders can be revised only for abuse of discretion, which is error of law (In re Weidenfeld, 254 Fed. 680, 166 C. C. A. 175) and that while we can review interlocutory proceedings, it is not advisable so to do (In re Strauss, 211 Fed. 123, 127 C. C. A. 521; In re Horowitz, 250 Fed. 106, 162 C. C. A. 278). As, however, this record raises nothing but

a question of jurisdiction, and one of some novelty, we conclude to entertain the petition, as an exception to, and not a relaxation of, the general rule above stated.

[2] Bankrupt's doctrine is that because, and solely because, he has a discharge, the court 'is without power (unless and until the discharge is revoked) to compel him by order to surrender concealed property, which, except for the discharge, it would be a contempt for him, after such order, to retain. Sections 2 (7), (13), (15), and 7 (2), of Bankruptcy Act (Comp. St. §§ 9586, 9591), It is not argued that discharge gives complete immunity for undiscovered wrong; it is admitted that plenary suits under sections 67 and 70 (sections 9651, 9654) may still be brought; but it is said that the personal control of court over bankrupt, by which he may be summarily required under pain of contempt to surrender whatever he unlawfully retains from his trustee (In re Schlesinger, 102 Fed. 117, 42 C. C. A. 207), vanished with, and by reason of, discharge.

No such quality is expressly given discharge by the act; but by inference from section 14 (section 9598) it is urged that, since a discharge must be refused if a bankrupt has concealed his property with intent to hinder, etc., or has refused to obey lawful orders of the court, it follows that, when the court discharges, it "certifies" that the applying bankrupt has not concealed, etc., and has obeyed all lawful orders; wherefore it is a disregard of its own judgment summarily to hale a discharged bankrupt before the court that found so much in his favor.

This view of discharge is merely wrong. In granting discharges the court adjudges or "certifies" nothing further than that affirmative proof has not been given establishing the existence of one or more of the grounds for refusing discharge. The language of section 14 is that the judge "shall * * * discharge the applicant unless" he has done a forbidden thing; and that this language has been construed to mean unless the objecting parties show that he has done the forbidden is too well known to require citation. That discharge is not a certificate of character we have recently pointed out. In re Hughes, 262 Fed. 500 (opinion Dec. 10, 1919). Indeed the act itself defines "discharge" to mean a "release" from provable debts other than those excepted by the statutes. Section 1, subsec. 12 (Comp. St. § 9585). As has recently been said, a "discharge operates merely to extinguish creditors' claims." In re Walsh, 256 Fed. 654, 168 C. C. A. 47.

A stronger argument may be founded on the analogies of the act of 1867 (14 Stat. 517) and the decisions thereunder. It was then held that after discharge a bankrupt could not be compelled to execute a conveyance necessary to enable his trustee to realize the proceeds of a Stock Exchange seat, and that the court's power to summon a bankrupt for examination concerning property said to have been fraudulently transferred passed away with discharge.[1]

---

[1] In re Dole, 11 Blatchf. 499, Fed. Cas. No. 3,964, and cases cited; In re Witkowski, 10 N. B. R. 209, Fed. Cas. No. 17,920; In re Nichols (D. C.) 1 Fed. 842, and (apparently contra); In re Heath, 7 N. B. R. 448, Fed. Cas. No. 6,304—the last a decision by Blatchford, J.

The differences between the present and former bankruptcy acts are very marked, and most of the cases cited rest upon the language of the twenty-sixth section of the late statute (R. S. §§ 5104 and 5107), providing that the bankrupt must "until his discharge be subject to the order of the court, and shall * * * do * * * all acts required by the court * * * to enable the assignee to demand, recover, and receive all the property and estate assigned, wherever situated." But especially Woodruff, J., in Re Dole, supra, fortified decision by considering many other parts of the statute, and came to the conclusion that that personal control over the bankrupt which is the essence of summary jurisdiction terminated with discharge.

In like manner we might be asked to consider section 1 (4), which defines the word "bankrupt" to "include," not only a person against whom an involuntary petition has been filed, or who has himself filed a petition or been adjudged, but also one against whom is preferred "an application to set a composition aside or to revoke a discharge," and also section 29b, which makes criminal the concealment of property belonging to the estate on the part of an accused "while a bankrupt or after his discharge"; and the argument might be made that one ceases to be a bankrupt when holding an unrevoked discharge, and it is only against him as a bankrupt that summary orders for examination or surrender of property may be entered. Though the argument is not without weight, we conclude that the present statute does not require the construction given that of 1867 in Re Dole. No such proviso as that of Rev. St. § 5104, can be found in the act of 1898, and the argument resting on the references just made to the language of the present statute fails for other reasons.

In Re Harper (D. C.) 175 Fed. 423, it was pointed out that some of the definitions in section 1 of the statute read "shall mean," while others read "shall include," and it was held not to have been "intended that definitions of words used in the act reading 'shall include' shall exclude other meanings or definitions of the word, or limit the ordinary and well-understood meanings." [2]

The word "bankrupt" was not invented by the act of 1898; it has a long and interesting history, and was well understood to mean generically one who had done or suffered something by law declared to be an act of bankruptcy. Bouvier, Law Dict., Ed. 1868. When, therefore, the portions of the statute first above referred to lay down generally the duties of bankrupts and the jurisdiction of the courts over them, it requires a specific restriction to terminate the power of the court over the bankrupt before the power of the court over the estate in bankruptcy comes to an end. The whole act should be construed in the spirit of the last paragraph of section 2 (Comp. St. § 9586), which declares that "nothing in this section contained shall be construed to deprive a court of bankruptcy of any power it would possess were

[2] In re Harper is a decision by Ray, District Judge, whose connection with and familiarity with the spirit of the Bankruptcy Act (owing to his membership in the judiciary committee of the House of Representatives at the time of its passage) is commented on in Remington on Bankruptcy, vol. 1, p. 15.

certain specific powers not herein enumerated." But the court's power over the estate does not end until the estate is closed by the discharge of the trustee upon the settlement of this accounts (Clark v. Pidcock, 129 Fed. 750, 64 C. C. A. 273), or by the revesting of the estate in the bankrupt by the confirmation of a composition (In re Hollins, 238 Fed. 787, 151 C. C. A. 637). It is also opposed to the history and spirit of bankruptcy legislation to affix or annex to discharge anything more than the statute explicitly gives to it. All discharges are a comparatively modern innovation, mitigating the status of bankruptcy, which historically was terminable only by death or annulment.[3]

The point before us was presented in Ex parte Waters, L. R. 18 Eq. 701, in 1874, where one partner, a discharged bankrupt, had used his employment by the creditors' committee to devote funds of the estate to paying his private creditors. He was proceeded against as for a contempt, and it was held:

"There is no distinction by reason of the fact that the debtors' discharge had been granted before this money was misapplied. The discharge only releases them from the debts provable * * *—not from the obligation to perform the duties prescribed by the statute."

In later English statutes a discharged bankrupt is specifically subjected to punishment as for contempt if he fails to give the trustee such assistance as is required in the "realization" of the estate—Bankruptcy Act 1914, part I, § 26 (9)—but the Waters Case rests on language as general as that of our statute.

The question argued has been decided adversely to this petitioner in the lower courts—assuming (as we do) that the power to examine a bankrupt as to his estate is fundamentally the same as that which compels him to give up or turn over whatever he has no right to retain. Mr. Olmstead, referee in the Massachusetts district, considered it at large in Re Peters, 1 Am. Bankr. R. 248, as did also Mr. Wise, referee in the Southern district of New York in Re Westfall, 8 Am. Bankr. R. 431, and the latter decision was expressly approved and confirmed by Adams, District Judge.

That the power of examination existed "at any time before final disposition of the estate" was assumed in Re Bryant (D. C.) 188 Fed. 530. And see Remington on Bankruptcy, § 473, citing In re Chandler (D. C.) 135 Fed. 893, affirmed (without discussion of this point) 138 Fed. 637, 71 C. C. A. 87.

Order affirmed, with costs.

[3] See Baldwin on Bankruptcy, Introduction; Remington on Bankruptcy, § 2414 et seq. Cf. Standard, etc., Co. v. Kattell, 132 App. Div. 539, 117 N. Y. Supp. 32, for an extreme example of refusing to a discharge proceeding any attribute of a judgment or decree.